**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

FEB 7 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| NATURAL-IMMUNOGENICS CORP., a Florida corporation, | No. 22-55990 |
| Plaintiff-Appellee, | D.C. No. 8:15-cv-02034-JVS-JCG |
| v. | |
| DAVID J. DARNELL; JAMES M. SABOVICH, | MEMORANDUM* |
| Appellants, | |
| and | |
| NEWPORT TRIAL GROUP, a California Corporation; SCOTT J. FERRELL, a California resident; RYAN M. FERRELL, an Arizona resident; VICTORIA C. KNOWLES, a California resident; ANDREW LEE BASLOW, a California resident; ANDREW NILON, a California resident; SAM PFLEG, a California resident; MATTHEW DRONKERS, a California resident; TAYLOR DEMULDER, a Nevada resident; SAM SCHOONOVER, a California resident; GIOVANNI SANDOVAL, an Arizona resident, | |
| Defendants. | |

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

| | |
|---|---|
| NATURAL-IMMUNOGENICS CORP., a Florida corporation, | No. 22-55992 |
| Plaintiff-Appellee, | D.C. No. 8:15-cv-02034-JVS-JCG |
| v. | |
| NEWPORT TRIAL GROUP, a California Corporation; SCOTT J. FERRELL, a California resident, | |
| Defendants-Appellants, | |
| and | |
| RYAN M. FERRELL, an Arizona resident; VICTORIA C. KNOWLES, a California resident; ANDREW LEE BASLOW, a California resident; ANDREW NILON, a California resident; SAM PFLEG, a California resident; MATTHEW DRONKERS, a California resident; TAYLOR DEMULDER, a Nevada resident; SAM SCHOONOVER, a California resident; GIOVANNI SANDOVAL, an Arizona resident, | |
| Defendants. | |
| NATURAL-IMMUNOGENICS CORP., a Florida corporation, | No. 22-56041 |
| Plaintiff-Appellant, | D.C. No. 8:15-cv-02034-JVS-JCG |
| v. | |
| NEWPORT TRIAL GROUP, a California Corporation; SCOTT J. FERRELL, a | |

California resident; RYAN M. FERRELL, an Arizona resident; VICTORIA C. KNOWLES, a California resident; ANDREW LEE BASLOW, a California resident; DAVID REID; ANDREW NILON, a California resident; SAM PFLEG, a California resident; MATTHEW DRONKERS, a California resident; TAYLOR DEMULDER, a Nevada resident; SAM SCHOONOVER, a California resident; GIOVANNI SANDOVAL, an Arizona resident,

    Defendants-Appellees,

BENJAMIN QUINTO; THEO QUINTO; PETER A. ARHANGELSKY; CHARLOTTE CARLBERG; MARYANN BUC; JIM BUC,

    Counter-defendants-Appellees.

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted December 6, 2023
Pasadena, California

Before: WARDLAW and BUMATAY, Circuit Judges, and KENNELLY,** District Judge.
Partial Concurrence and Partial Dissent by Judge BUMATAY.

---

  ** The Honorable Matthew F. Kennelly, United States District Judge for the Northern District of Illinois, sitting by designation.

3

Attorneys David J. Darnell and James M. Sabovich appeal the district court's sanctions order pertaining to their filing of counterclaims. Their client, Newport Trial Group ("NTG"), defendant and counter-plaintiff below, joins in the sanctions appeal. In a consolidated matter, NTG appeals the district court's order enforcing the settlement agreement. Finally, plaintiff and counter-defendant below, Natural Immunogenics Corp. ("NIC"), cross-appeals from the district court's denial of sanctions pertaining to the settlement agreement. We have jurisdiction pursuant to 8 U.S.C. § 1291, and we affirm.

1. The district court did not err by interpreting the parties' binding Term Sheet as an agreement that the "settlement terms" would be confidential and subject to liquidated damages. The precise scope of the confidential terms and liquidated damages were to be subject to "further discussion." The text of the parties' agreement is "clear and explicit," and so "it governs." *See Powerine Oil Co., Inc. v. Superior Ct.*, 37 Cal. 4th 377, 390 (2005) (quoting *Bank of the W. v. Superior Ct.*, 2 Cal. 4th 1254, 1264 (1992)).

Reading the contract to form a substantive agreement as to confidentiality does not render negotiations about the "precise scope" surplusage. Rather, this reading is consistent with California courts' recognition that parties may bind themselves to agreements while leaving minor matters to further discussion. *See Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 813 (1998).

4

Nor do NTG's appeals to the parties' course of dealings overcome the plain text of the agreement. *See First Nat'l. Morg. Co v. Fed. Realty Inv. Tr.,* 631 F.3d 1058, 1067 (9th Cir. 2011) (California contract law permits extrinsic evidence only when the offered evidence is "relevant to prove a meaning to which the language of the instrument is reasonably susceptible." (quoting *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 37 (1968)).

2. The district court did not err by concluding that the Term Sheet was enforceable despite the parties' failure to execute a long-form agreement specifying the precise scope of confidentiality or the value of liquidated damages for breach of confidentiality. The Term Sheet contains no conditional language to suggest that the existence of an agreement would depend upon the parties' ability to execute a long-form agreement. Moreover, a contract can remain enforceable if non-essential terms are left for future agreement. *Price Dev. Co. v. Redevelopment Agent of City of Chino*, 852 F.2d 1123, 1126 (9th Cir. 1988). Whether a term is essential "is a question of degree and may be settled by determining whether the indefinite promise is so essential to the bargain that inability to enforce that promise strictly according to its terms would make unfair the enforcement of the remainder of the agreement." *City of Los Angeles v. Superior Ct. of Los Angeles Cnty.*, 51 Cal. 2d 423, 433 (1959). NTG has not established that the "precise scope" of confidentiality or the amount of liquidated damages are material such

5

that their absence would render enforcement unfair. While the broad scope of confidentiality—i.e. confidentiality for settlement terms—was discussed by the parties and included in the Term Sheet, NTG has not shown that the limited exceptions or other matters that might fall within the meaning of "precise scope" were material to the parties' agreement. Further, as the district court concluded, "[i]f either party were to bring an action for breach of the Term Sheet, a court would be able to order specific performance or award damages in the absence of an agreed upon liquidated damages provision."

3. Any dispute regarding who is responsible for paying the judgment is mooted by our decision to uphold the district court's order enforcing the settlement agreement. NTG contends that the district court erred in ordering "Defendants" rather than "NTG" specifically to pay the settlement amount, but NTG has not contested that it, rather than any other defendant, paid the judgment pending appeal.[1]

4. The district court did not abuse its discretion by denying NIC's motion for sanctions pursuant to the settlement agreement. NIC moved for sanctions pursuant to both the district court's inherent sanctioning authority and 28 U.S.C. § 1927 based on a proposal made by NTG's counsel during the settlement

---

[1] Moreover, any error in the district court's order appears to be merely clerical. Thus, we affirm without prejudice to NTG seeking relief in the district court in the form of a Rule 60(a) motion.

discussions. The district court properly evaluated the questions of bad faith, as required for inherent sanctions, and recklessness, as required for § 1927 sanctions. *See Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001). NIC fails to demonstrate clear error. Because the absence of bad faith or recklessness proved dispositive to the motion that was before the district court, the district court was not obligated to explicitly rule on NIC's arguments under California Rule of Professional Conduct 5.6.

5. The district court did not abuse its discretion by sanctioning NTG and its attorneys for filing a counterclaim in violation of the court's scheduling order. The district court's scheduling order set a deadline to file "all motions to join other parties or to amend the pleadings." A scheduling order "controls the subsequent course of the action" unless modified by the court upon a showing of good cause. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). And Rule 16 permits the district court to issue sanctions for violation of a scheduling order. Fed. R. Civ. P. 16.

NTG filed its counterclaim, which added several new parties, well after the scheduling order's deadline, without making any effort to seek a modification of that order. Litigation of the counterclaim would necessarily have required modification of the schedule the district court had set. In light of NTG's failure to seek leave and the significant disruption that litigation of the counterclaim would

have caused, including recusal of NIC's counsel, the district court was well within its discretion to issue sanctions based upon the scheduling order violation.[2] *See* Fed. R. Civ. P. 16(f).

**AFFIRMED.**

---

[2] Because we affirm the sanctions order on Rule 16(f) grounds, we do not reach the Rule 11 issue.



FILED

FEB 7 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Natural-Immunogenics Corp. v. Newport Trial Group*, No. 22-55990

BUMATAY, Circuit Judge, concurring in the judgment in part and dissenting in part:

I concur with the conclusion that (1) the district court properly determined that the parties' Term Sheet was a binding and enforceable agreement, subject to further negotiations on the scope of the confidentiality of the settlement terms and the amount of liquidated damages; (2) any error by the district court in ordering the "Defendants," rather than Newport Trial Group ("NTG") alone, to pay the settlement amount was mooted by NTG's actions; and (3) the district court did not abuse its discretion in declining Natural-Immunogenics Corp.'s motion for sanctions.

But I would reverse the district court's sanction of attorneys David Darnell and James Sabovich. While the filing of the counterclaim may have been aggressive and potentially disruptive, we must be sensitive to the dangers of "chill[ing] vigorous advocacy." *In re Keegan Management Co., Securities Litigation*, 78 F.3d 431, 435 (9th Cir. 1996) (simplified).

First, it was an abuse of discretion to sanction the attorneys under Rule 11. While I don't necessarily disagree with the district court's legal conclusions, it took considerable analysis to show that the counterclaim violated the statute of limitations and the *Noerr-Pennington* doctrine. So it's hard to say that asserting the counterclaim was baseless. *See Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990).

1

Second, while a closer question, the district court also abused its discretion in sanctioning the attorneys for violating its scheduling order under Rule 16(f). Darnell and Sabovich contend that they did not need to seek leave to file their counterclaim because it was a compulsory counterclaim. Although unwise not to seek permission first, it is at least colorable that they thought that Rule 13(a) required the filing notwithstanding the scheduling order. We have never addressed this question. And it has been raised before. *See Olenicoff v. UBS AG*, 2011 WL 13225083, at *2 (C.D. Cal. 2011) ("Defendants argue that Rule 16(b) should not apply because the Scheduling Order only applies to amended pleadings, not proposed counterclaims."). Nor did the district court find this argument was made in bad faith. Given all this, I would reverse the sanctions against Darnell and Sabovich.